# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **SHERRY L. LASSOR,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Docket No. 06-176-P-H** |
| | ) | |
| **MICHAEL J. ASTRUE,[1]** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal questions whether the administrative law judge properly evaluated the plaintiff's physical and mental limitations.  I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from severe impairments of depressive/bipolar disorder, history of post-traumatic stress disorder, a seizure disorder, headaches, low back pain and obesity, none of which, alone or in combination, met or equaled the criteria of any impairment listed in Appendix 1 to Subpart P, 20 C.F.R. Part 404 ("the Listings"), Findings 3-4,

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted her administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on July 3, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with (*continued on next page*)

Record at 16; that the plaintiff's testimony regarding the severity of her pain, depression and other limitations was not well supported by the medical evidence and was not considered credible, Finding 5, *id*.; that she retained the physical residual functional capacity to perform work at the light and sedentary levels of exertion, as she could sit at least six hours, stand or walk at least six hours, and lift or carry up to 20 pounds occasionally and 10 pounds frequently, in an 8-hour work day, Finding 6, *id*.; that she retained the mental residual functional capacity to perform at least unskilled work, as she could understand, remember and carry out simple job instructions, relate appropriately to others in the workplace and sustain attention and concentration for simple tasks, Finding 7, *id*.; that she was unable to perform her past relevant work, Finding 8, *id*. at 17; that she was capable of performing unskilled, light and sedentary work that existed in significant numbers in the national economy, Finding 9, *id*.; and that she had not been disabled, as that term is defined in the Social Security Act, at any time through the date of the decision, Finding 10, *id*.  The Appeals Council declined to review the decision, *id*. at 5-7, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1381(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential review process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her

citations to relevant statutes, regulations, case authority and page references to the administrative record.

past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 136, 147 n.5 (1987); *Goodermote*, 647 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

### Discussion

The plaintiff first contends that the administrative law judge erred by "indicat[ing] . . . that neither Petitioner's treating physicians nor the Petitioner indicated that seizures were a problem after the note of June 24, 2005."  Statement of Errors, etc. ("Itemized Statement") (Docket No. 8) at 3.  In fact, the administrative law judge summarized the medical evidence regarding seizures and concluded that "there is no persuasive evidence that the claimant continued to have a serious problem with . . . seizures" after June 24, 2005.  Record at 14.  The plaintiff refers to (i) the records of Dr. John Boothby who on June 28, 2005 stated that "Petitioner reported frequent seizures at night and early morning myoclonus fairly frequently;" (ii) the plaintiff's testimony that she "had nighttime seizures twice per week and wet her pants" and woke up "dazed and confused for two to three hours in the morning;" and (iii) Dr. Boothby's statement in October 2004 that "if the Petitioner had not improved on the anti-seizure medication, she would have qualified for Social Security disability."  Itemized Statement at 3.  She concludes from these items of evidence that "[n]ightly seizures and early morning myoclonus should have been considered a non-exertional limitation by the ALJ in determining whether the number of available unskilled light and sedentary jobs would be degraded in any fashion."  *Id.*

The administrative law judge did find that the plaintiff suffered from a seizure disorder. Record at 16.  He did not mention myoclonus.[3]  In the absence of any medical evidence to the effect that seizures during sleep twice per week — not nightly — and fairly frequent early-morning

---

[3] Myoclonus is the twitching or clonic spasm of a muscle or group of muscles. *Taber's Cyclopedic Medical Dictionary* (14th ed. (*continued on next page*)

myoclonus would have more than a *de minimus* effect on the light or sedentary occupational base, the administrative law judge did not err by failing to consider these medical conditions at Step 5 of the sequential evaluation process.  *See* Social Security Ruling 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 45-46; *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). Even if the plaintiff's testimony that in the morning after a night-time seizure she woke up "[d]azed, confused" for two to three hours is properly characterized as pertaining to the time of the testimony rather than to a time in the past when she was employed,  *see* Record at 343, and ignoring the lack of cited medical evidence tying that confusion to the seizures,[4] the administrative law judge's conclusion that the plaintiff's testimony was "not well supported by the medical evidence and is not considered credible," *id*. at 16, applies.   The plaintiff does challenge this conclusion as it relates to her credibility, but only with respect to her testimony about the effects of her back pain on her ability to sit and stand.  Itemized Statement at 4.  Finally, Dr. Boothby's statement over a year before the plaintiff's hearing to the effect that "if she is not improved she will qualify for Social Security disability," *id*. at 224, on which the plaintiff relies, Itemized Statement at 3, could as easily refer to her headaches as to her seizures and, more importantly, is not medical evidence because it is a statement of opinion on a question reserved to the commissioner.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).[5]

---

1981) at 925.  "Clonic" involves alternate contraction and relaxation of muscles.  *Id*. at 300.

[4] When asked at oral argument what medical evidence in the record demonstrated that the plaintiff was dazed and confused for two hours after waking following a night-time seizure, counsel for the plaintiff cited Dr. Boothby's statement on June 28, 2005 that the plaintiff "continues to have early morning myoclonus fairly frequently," Record at 222.  Given the definition of myoclonus, fn. 3 above, the quoted statement cannot reasonably be interpreted as medical evidence of a dazed or confused mental state.  Nothing else in that letter from Dr. Boothby may fairly be interpreted to refer to mental confusion immediately after awakening.

[5] The plaintiff also contends that "some determination should have been made through a medical expert whether the Petitioner could have engaged in regular employment for all three shifts in any potential work scenario given her nighttime seizures and morning disorientation."  Itemized Statement at 3.  Whether to consult a medical advisor at hearing is a matter solely within the administrative law judge's discretion.  *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 5 (1st Cir. 1987).  At Step 5, the commissioner must establish the claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means 8 hours a day, for 5 days a week.  Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2006) at 144.  There is no requirement that the commissioner prove that the claimant can work "all three shifts in any potential work scenario;" indeed, many of the jobs available at the light and sedentary exertion levels are commonly performed only during daylight hours and are not "shift" jobs at all.  At oral argument, counsel for the plaintiff speculated that (*continued on next page*)

4

The plaintiff next contends that the administrative law judge "never assessed how the Petitioner's obesity may have affected her residual functional capacity," and that this omission requires remand. Itemized Statement at 4. The administrative law judge did conclude that "[n]one of this medical evidence concerning the claimant's physical impairments, including seizures, headaches, back pain, and obesity, demonstrated any significant work-related limitations that would have precluded performance of at least light and sedentary work for any continuous period of at least 12 months." Record at 14. Here, the plaintiff relies, Itemized Statement at 4, on the evaluations by a state-agency physician reviewer, who noted that the plaintiff should never climb ladders, ropes or scaffolds; should only occasionally climb ramps or stairs; and could frequently balance, stoop, kneel, crouch and crawl, Record at 199. No explanation is given by the reviewer for these notations, indicating that "frequently" meant more than two-thirds of the time and "occasionally" meant more than one-third. *Id*. The reviewer also noted "no unprotected heights[/]hazardous machinery," *id*. at 201, but that reviewer never mentions obesity as a possible cause of these limitations, *id*. at 197-204. In any event, the plaintiff must point to medical evidence suggesting that her obesity significantly aggravated or contributed to her physical limitations, *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006), and here she has not done so. If the plaintiff means instead to argue that these limitations, whatever their cause, invalidate the administrative law judge's conclusion, specific functions designated as being within a claimant's ability to perform "frequently" are not used in any case law located by my research as significant non-exertional limitations on a claimant's ability to perform the full range of sedentary or light work. That leaves the excluded climbing of ladders, ropes or scaffolds

---

the number of jobs available to a claimant may be degraded by the possibility that some jobs require the ability to work any of three shifts, making them unavailable for the plaintiff whose seizures are similar to a sleep disorder in that both may prevent a claimant from working a particular shift. In the absence of any citation to authority in support of this argument and any indication that a substantial number of the jobs within the residual functional capacity assigned to the plaintiff by the administrative law judge are in fact worked in three daily shifts, this argument remains nothing more than rank speculation.

and the occasional climbing of ramps or stairs for consideration in this case.  Courts have considered limitations found at this level to be significant sufficient to require the testimony of a vocational expert rather than direct reliance on the Grid, as was done here.  *See, e.g.*, *Ianni v. Barnhart*, 403 F.Supp.2d 239, 259-60 (W.D.N.Y. 2005).  Here, the administrative law judge specifically found that none of the plaintiff's severe impairments "demonstrated any significant work-related limitations that would have precluded performance of at least light and sedentary work for any continuous period of at least 12 months." Record at 14.  However, that is not the applicable test.  An administrative law judge may not rely on the Grid when there are non-exertional limitations that "significantly affect[ a] claimant's ability to perform the full range of jobs" at that exertional level.  *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).  The administrative law judge in this case appears to reject the non-exertional limitations found by the state-agency reviewer, or at least to find them insignificant, but he never tells us why.[6]

Ordinarily, such an omission would require remand.  However, in *Atkinson v. Barnhart*, 2006 L 1455473 (D. Nev. May 19, 2006), at *6-*7, the court upheld an administrative law judge's conclusion that a limitation of "only occasionally perform[ing] postural activities, no climbing ladders, ropes or scaffolds, and need to avoid concentrated exposure to excessive vibration or work hazards does not significantly erode the ability to perform sedentary and light work as most jobs at these exertion levels do not require these activities." Thus, the determination that a claimant's capacity to perform the full range of sedentary or light work is not significantly diminished by her non-exertional impairments can be made without the introduction of testimony from a vocational expert.  *See also Ramos v. Barnhart*, 2006 WL 980570 (D. Conn. March 3, 2006), at *13.  Although the

_____

[6] The administrative law judge states, in passing, that the state-agency evaluation in question "concluded that the claimant did not have any severe impairments," Record at 13, but that reviewer in fact concluded only that the plaintiff's impairments were not of "listing level frequency or severity," *id.* at 202, 204, a Step 3 conclusion, not a conclusion as to whether the impairments were severe, a Step 2 (*continued on next page*)

6

administrative law judge's use of an erroneous legal standard makes this a closer question than it might otherwise be, I conclude that there is sufficient evidence to support such a determination in this case and it is more likely than not that the administrative law judge meant to present such a determination. *See Penaloza-Clemente v. Secretary of Health & Human Servs.*, 985 F.2d 552 (table), 1993 WL 33329 (1st Cir. Feb. 12, 1993), at *5-*6 (exclusive reliance on Grid not error when nonexertional limitations on sedentary work were occasional climbing, kneeling, crouching and crawling). The plaintiff is not entitled to remand on this basis.

Under the heading "Degenerative Disc Disease and Back Pain," the plaintiff next contends that the administrative law judge wrongly considered her testimony not to be credible and wrongly translated raw medical data into functional restrictions. Itemized Statement at 4-5. She refers specifically to her testimony "that she could not sit for long periods and she could not stand for long periods because of back pain." *Id*. at 4. The duration of "long periods" was not part of that testimony. *Id*. She asserts that "[h]er objective medical evidence certainly supported a finding of degenerative disc disease which was obviously aggravated by her obesity." *Id*. She cites no authority after this statement but her counsel confirmed at oral argument that this sentence refers to the medical evidence quoted in the following paragraphs. None of that evidence refers in any way to sitting or standing.[7] *Id*. at 5. The administrative law judge did find that the plaintiff's back pain was a severe impairment. Record at 16. He gave his reasons for discounting the plaintiff's credibility in this regard. *Id*. at 14. The only one of those reasons addressed by the plaintiff — Dr. Herzog's statement in his consultant report of September 2005 that the plaintiff "should be fine for getting back to at least light duty work,"

---

inquiry.

[7] At oral argument, counsel for the plaintiff contended that chronic L5-S1 radiculopathy, obesity, poor spinal range of motion, deconditioning and degenerative disc disease, all but the last of which are mentioned in the medical evidence quoted in the plaintiff's memorandum at this point, Itemized Statement at 5, "obviously" cause pain and "impact the ability to sit and stand." Again, in the absence of medical evidence about the relationship between these diagnoses and the pain from which the plaintiff testified she suffered, (*continued on next page*)

Case 2:06-cv-00176-DBH   Document 13   Filed 07/11/07   Page 8 of 9   PageID #: 37

Itemized Statement at 5, Record at 317 — is not, contrary to the plaintiff's characterization, "in the context of a requirement that the Petitioner lose 150 pounds . . . before getting back to work[,]" Itemized Statement at 5, but rather is completely independent of the statement that "[f]irst and foremost, as you have recommended, Sherry needs to lose about 150 lbs. of weight to decrease stress on her spine," from which it is separated by a sentence describing the presence or lack of other specific symptoms, Record at 317.  I see no evidence that the administrative law judge attempted to translate the "raw medical data" quoted by the plaintiff, none of which suggests any specific functional limitation, as noted above, and none of which suggests that she suffered from "degenerative disc disease which was obviously aggravated by her obesity."  Itemized Statement at 4.

Finally, the plaintiff asserts that the administrative law judge "never delineated what non-exertional mental limitations he was considering in making his findings so that a meaningful review of his decision could occur."  *Id*. at 6.  However, the administrative law judge devoted almost an entire single-spaced page of his opinion to a discussion of the plaintiff's alleged mental limitations, noting that there was no evidence of mental health treatment after March 2005, that the plaintiff showed good response to medications with no adverse side effects and that her stress was reduced after her dispute with the state of Maine ended, and concluding that the plaintiff was "able to understand, remember and carry out simple job instructions, relate appropriately to supervisors, coworkers and the public, and can sustain attention and concentration for simple tasks."  Record at 15-16.  This is in fact a "delineation of non-exertional mental limitations" that is consistent with the demands of unskilled sedentary work, making direct application of the Grid appropriate.  *See Swan v. Barnhart*, 2004 WL 1529270 (D. Me. Apr. 30, 2004), at *7.

---

this argument is based entirely on speculation and does not demonstrate any error in the administrative law judge's opinion or conclusions.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 11th day of July, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge